**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-04373-JLK

RODRIGO LOPEZ CASTILLO,

Petitioner,

v.

JUAN BALTAZAR, Warden of the Aurora Detention Facility;
DAVID VENTURELLA, Acting Director of
Immigration & Customs Enforcement;
MARKWAYNE MULLEN, Secretary, U.S. Department of
Homeland Security,

Respondents.

---

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1)**

---

Kane, J.

This matter comes before me on Petitioner Rodrigo Lopez Catillo's Petition for Habeas Corpus (ECF No. 1) challenging his unlawful detention at the U.S. Immigration and Customs Enforcement ("ICE") Detention Facility in Aurora, Colorado. Respondents, the U.S. Department of Homeland Security ("DHS"), the U.S. Department of Justice's Executive Office for Immigration Review, related government officials, and the warden of the Aurora Detention Facility, were ordered to show cause why the Petition should not be granted. Respondents nominally filed a Response to Petition for Writ of Habeas Corpus and Order to Show Cause (ECF No. 7). However, the Response indicates that Respondents will not file a brief in opposition to the Petition. Resp. to Pet. at 1.

## I. Background

The limited facts I have before me are from Mr. Castillo's Petition and, as Respondents chose not to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case," I treat Mr. Castillo's assertions as true. *See Burlington N. R. Co. v. Huddleston,* 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually.").

Mr. Castillo is a Mexican citizen who entered the United States on a B2 visitor visa in 1996. Pet. for Habeas Corpus at 6, ECF No. 1. Mr. Castillo resided in the United States for twenty-three years until he voluntarily departed after being apprehended for overstaying his visa. *Id.* During the three years of his return to Mexico, Mr. Castillo was subjected to unlawful arrests, threats, and torture. *Id.* As a result, Mr. Castillo fled back to the United State in October 2022. *Id.* As of this date, Mr. Castillo's Application for Asylum is pending. *Id.*

On February 3, 2026, Mr. Castillo was arrested by Mesa County Sheriffs for a violation of a Protection Order (Possession of Alcohol). *Id.* at 7. Mr. Castillo's summons court date was continued to March 19, 2026, and when he appeared for the summons ICE officers detained Mr. Castillo. *Id.* He was not provided a warrant for his arrest nor a Notice to Appear. *Id.* He has been detained for more than six months. *Id.* at 8. Respondents also did not conduct an individualized determination that he would be likely to escape before a warrant could be obtained. *Id.*at 7. Mr. Castillo is currently being detained at the ICE Detention Facility in Aurora, Colorado. *Id.* On September 14, 2026, he filed the Petition for Writ for Habeas Corpus in this case, requesting that the Court assume jurisdiction over the matter, prohibit Respondents from removing him from the State and issue a writ of habeas corpus requiring Respondents to release him or provide him with a new bond hearing with a different immigration judge.

## II. Legal Standard

I begin with the statutory authority that empowers federal courts to issue writs of habeas corpus. Section 2241 of Title 28 of the U.S. Code provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions" when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a) & (c). Specifically, "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004)). The general rule for habeas petitions challenging present physical confinement is that jurisdiction lies in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). Here, Mr. Castillo is confined in Aurora, Colorado, which falls within this district. Pet. for Habeas Corpus at 1.

Mr. Castillo contends he is in custody in violation of the laws that govern ICE arrests, and of the Fourth, Fifth, and Fourteenth Amendment to the Constitution. The applicable statutory framework distinguishes between immigration arrests made pursuant to a warrant and those made without one. For noncitizens[1] arrested in the interior of the United States while removal proceedings are pending, as Mr. Castillo was,[2] the Tenth Circuit has recently held that detention is governed by 8 U.S.C. § 1226(a). *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). Section 1226(a) expressly contemplates arrest "[o]n a warrant issued by the Attorney

---

[1] I use the term "noncitizen" as an equivalent to the word "alien" in the relevant statutes. I do so because "noncitizen" is not only more appropriately descriptive but also because it is less likely to carry the same biases. *See* Keith Cunningham-Parmeter, *Alien Language: Immigration Metaphors and the Jurisprudence of Otherness*, 79 FORDHAM L. REV. 1545, 1585 (2011) ("By appropriating, repackaging, and circulating certain immigration metaphors, [] [c]ourt[s] join[] other cultural institutions in creating a dominant account of who immigrants are and how they should be treated.").

[2] Respondents submit that Mr. Castillo is "in removal proceedings." Resp. to Pet. at 1.

General" and authorizes detention pending a determination whether the noncitizen is removable. 8 U.S.C. § 1226(a). Thus, where the Government relies on § 1226(a), a warrant ordinarily supplies the statutory authority for the arrest and ensuing detention. Mr. Castillo alleges that no such warrant was issued before his arrest and contends that his detention is therefore unlawful. Pet. for Habeas Corpus at 2, 9–11.

Without a warrant, DHS's authority to arrest noncitizens is materially limited "particularly in the interior-arrest context." *Morelos Valdovinos v. Noem*, No. 26-cv-0338, 2026 WL 948285, at *5 (D.N.M. April 8, 2026) (recommendation from Magistrate Judge) (collecting cases). As the Supreme Court has explained, when "no federal warrant has been issued," immigration officers possess only the "more limited authority" Congress has provided for warrantless arrests. *Arizona v. United States*, 567 U.S. 387, 408 (2012). That authority is set out in 8 U.S.C. § 1357(a)(2) and repeated in 8 C.F.R. § 287.8(c)(2)(ii).[3] Under those provisions, an immigration officer may arrest a noncitizen without a warrant only if the officer has reason to believe both that the person is unlawfully present in the United States and that the person "is likely to escape before a warrant can be obtained." *Arizona*, 567 U.S. at 408; 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(i)-(ii).

[3] Section § 1357(a)(5) provides for additional exceptions for a warrantless arrest:

> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
>
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony, . . . *and if there is a likelihood of the person escaping* before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5) (emphasis added). Based on the facts of this case, these exceptions are not applicable, nor would Respondents be able to show they believed there was "a likelihood of [Mr. Castillo] escaping" as I discuss below.

The latter requirement imposes an independent limitation on warrantless arrest authority. It is not enough that an officer has reason to believe the individual is removable; the officer *must* also have a particularized basis for concluding that the person is likely to escape before a warrant can be secured. *See Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007–08 (N.D. Ill. 2016) (emphasis added). Courts have treated this "reason to believe" element as synonymous with probable cause. *Roa-Rodriguez v. United States*, 410 F.2d 1206, 1209 (10th Cir. 1969); *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) (collecting cases where "reason to believe" in § 1357(a)(2) was noted to be the equivalent of probable cause); *Moreno*, 213 F. Supp. 3d at 1007. In assessing whether an officer had probable cause to conclude a person is likely to escape before a warrant can be obtained, courts have considered conventional indicators of flight risk, including the individual's ties to the community. *See, e.g.*, *United States v. Khan*, 324 F. Supp. 2d 1177, 1186–87 (D. Colo. 2004).

## III. Analysis

Respondents have not provided any argument or set forth any evidence indicating that Mr. Castillo's warrantless arrest was proper under § 1357. Instead, Respondents chose not to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case." Resp. to Pet. at 1, ECF No. 7. Despite not submitting a brief in opposition, or any filing detailing the appropriateness of Mr. Castillos' arrest, Respondents still ask that I issue an Order "directing that Respondents, within seven days . . . provide Petitioner with a bond hearing . . . or else release Petitioner." *Id.* at 2. I find that Mr. Castillo's warrantless arrest and continued detention are unlawful and that the proper remedy is his immediate release, not the suggested bond

hearing. *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024) (noting respondents "bear the burden to justify Petitioner's detention").

For Mr. Castillo's warrantless arrest to be lawful, the arresting officer must have had reason to believe both that he was unlawfully present in the United States and that he was "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). As discussed, a "lack of lawful status" is insufficient to justify a warrantless arrest under 8 U.S.C. § 1357. *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025) (pending appeal). Considering the context of Mr. Castillo's warrantless arrest, I struggle to believe an officer could have had reason to believe he was "likely to escape." 8 U.S.C. § 1357(a)(2). At the time of his detention, he was seemingly making an appearance for his court date and was awaiting a decision on his asylum application, not to mention his strong local ties including his family, work, and church. Without any presentation from Respondents regarding factors that may have made Mr. Castillo a flight risk, I cannot find that his detention by ICE constituted a permissible warrantless arrest under § 1357(a)(2). *See Morelos Valdovinos*, 2026 WL 948285, at *6 (finding that respondents lacked authority to arrest petitioner because "[n]othing in the record suggests that either statutory condition–reasonable belief of a violation or likelihood of escape–was met" and "the record contains no facts that would satisfy § 1357(a)(2) or (a)(5)'s narrow prerequisites for a warrantless arrest"). Consequently, I conclude Respondents lacked the statutory authority to arrest Mr. Castillo and that his detention is thus unlawful.

The only contested question in this case is whether release or a bond hearing is the appropriate remedy for Mr. Castillo's unlawful detention. Respondents provide no argument to justify their request that I order a bond hearing. Instead, they cite a single case—*Santillan Quiroz*, noting that the Tenth Circuit remanded that case and directed the district court to "order

the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him." Resp. to Pet. at 2 (quoting *Santillan Quiroz*, 180 F.4th at 1251 n.13). In *Santillan Quiroz*, however, the petitioner challenged only his continued detention without a bond hearing and not ICE's authority to effect his arrest. 180 F.4th at 1233. The defect here is not merely the denial of statutory protections that can be remedied through a later bond hearing; it is the absence of lawful authority to initiate and maintain Mr. Castillo's detention. Habeas corpus exists principally to remedy that precise injury—unlawful detention. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention," for which the "typical remedy . . . is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (explaining that the "traditional function of the writ is to secure release from illegal custody"). Consistent with that principle, courts addressing warrantless immigration arrests have ordered release where the Government could identify neither a warrant authorizing detention under § 1226(a) nor facts satisfying the narrow warrantless-arrest authority of § 1357(a)(2). *See Quezada-Estrada v. Lyons*, No. 26-cv-01599-NYW, 2026 WL 1361880, at *6 (D. Colo. May 15, 2026) (ordering petitioner's release because the petitioner's detention lacked a "lawful predicate"); *Arrioja Blanco v. Valdez*, No. 26-cv-03312-PAB, 2026 WL 2267337, at *2 (D. Colo. Aug. 6, 2026) (ordering release following an unlawful warrantless arrest).

A future bond hearing would not supply the missing statutory authority. As courts in this District have recognized, where detention under § 1226(a) was never lawfully commenced, the Government cannot cure that defect by supplying process after the fact. *See Quezada-Estrada*, 2026 WL 1361880, at *5–6 (rejecting the Government's reliance on a subsequently issued warrant and concluding that a post hoc warrant did not validate detention originating in an unlawful arrest); *Morelos* Valdovinos, 2026 WL 948285, at *7; *see also Alberto C.M. v. Noem*,

817 F. Supp. 3d 735, 739–40 (D. Minn. 2026) (ordering release notwithstanding a later-issued warrant). Because Respondents lacked statutory authority to arrest Mr. Castillo without a warrant and have identified no lawful predicate for the resulting detention, continued custody is unlawful. I therefore order his immediate release.

I also note that should Respondents obtain a warrant and re-detain Petitioner, this subsequent detention would be pursuant to § 1226(a), and Mr. Castillo would be entitled to a new bond hearing. *Escalante v. Venturella*, No. 26-cv-01657-PAB, 2026 WL 1745528, at *3 (D. Colo. June 17, 2026) (holding that a petitioner previously released after an improper warrantless arrest would be entitled to a new bond hearing if re-detained).

## IV. Conclusion[4]

Therefore, it is ORDERED:

1. Petitioner Castillo's Petition for Habeas Corpus [ECF No. 1] is GRANTED;
2. Respondents shall release Petitioner Castillo from custody within 24 hours of this order, along with his passport, identification documents, or other personal property of Petitioner Castillo that Respondents may have in their possession;

[4] I note that on November 25, 2025, my colleague Judge Brooke Jackson issued a preliminary injunction prohibiting ICE from "effect[ing] warrantless arrests in this District unless, pre-arrest, the arresting officer has probable cause to believe that the individual is in the United States in violation of United States immigration laws and probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(2)." *Ramirez Ovando*, 810 F. Supp. 3d at 1240–42. The preliminary injunction also requires an arresting officer to, after a warrantless arrest, "document in writing the facts and circumstances surrounding that arrest in the narrative section of the detainee's Form I-213," Record of Deportable/Inadmissible Alien. *Id.* at 1241. As ordered, this Form I-213 "shall, upon request, [be] provid[ed] to plaintiffs' counsel . . . no later than ten (10) days after the arrest." *Id.*

3. The parties shall file a status report confirming that petitioner has been released from custody on or before October 2, 2026;

DATED this 28th day of September, 2026.

John L. Kane

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE